PAUL W. MULLER, MATHILDE, HIS WIFE, and EMMA E. PFEIL, complainants,

*v.*

MICHAEL CAVANAUGH and MARGARET CAVANAUGH, HIS WIFE, defendants.

[Decided June 19th, 1923.]

1. Where a complainant seeks to enforce a restrictive covenant. his right to the relief sought must be clear. If it is doubtful, to doubt is to deny.

2. Where the covenant in question provided that the defendant should not "erect nor permit to be erected on said land any building known as a tenement or community house," and the structure in process of erection is what is known as a two-family house, one floor to be occupied by one family and the other floor by another family, but no part of the building, nor any of its facilities, is to be inhabited or utilized in common by the respective occupants of the floors, the erection thereof will not be enjoined.

On pleadings and proofs.

*Messrs. Humphreys & Sumner,* for the complainant.

*Mr. Michael Dunn,* for the defendants.

LEWIS, V. C.

This litigation is initiated by the complainants for an injunction restraining the defendants from erecting on their property fronting on the boulevard at Passaic, New Jersey, a two-family house, upon the ground that the erection of such a house is violative of a restrictive covenant affecting the property of the defendants. The facts in the case are agreed upon, and the only question which this court is called upon to determine is, as I conceive it, whether or not the structure which the defendants propose to erect is in violation of the covenant mentioned, which provides, among other things, that the defendants

"shall not at any time erect, nor permit to be erected upon said premises any house or building for business or manufacturing purposes of any kind; * * * nor * * * any building, except for resident purposes; nor any building less than two stories in height; nor that may cost less than three thousand dollars ($3,000), and then only one building on each fifty (50) feet of street frontage; nor erect, nor permit to be erected on said land any building known as a tenement or community house. * * *."

The property immediately affected is plot twenty-five (25), on block two hundred and thirty-eight (238), as laid out on the Third ward assessment map of the city of Passaic. It has a frontage of sixty (60) feet on the southwesterly side of the boulevard, and a depth of about one hundred and thirty-eight (138) feet.

The complainants, Paul W. Muller and Mathilde T. Muller, his wife, are the owners of plot twenty-two (22) in block two hundred and thirty-eight (238), of the same dimensions as the plot of the defendants, and immediately adjoining the same on the northwesterly side thereof. The complainant, Emma E. Pfeil, is the owner of plot twenty-eight (28),

*94 N. J. Eq.*        Muller *v.* Cavanaugh.

in block two hundred and thirty-eight (238), which is located at the corner of the boulevard and Mead avenue, and has a frontage on the boulevard of seventy and eight-tenths (70 8/10) feet, and a depth of about one hundred and thirty-eight (138) feet. It immediately adjoins the south-westerly side of the defendants' plot. So that the defendants' plot lies immediately between the Muller plot and the Pfeil plot.

Aletta M. Hageman, during her lifetime, was seized in fee of the whole of the said block two hundred and thirty-eight (238), and also of block two hundred and twenty-nine (229): She died in 1903. During her lifetime she made conveyances to several parties of several parcels or plots in those two blocks and each of her deeds contained a covenant on the part of the grantees, their heirs and assigns, with the grantor, her heirs and assigns, that the said grantees, their heirs and assigns, should not erect at any time, nor permit to be erected on the lands by those deeds granted and conveyed, any build-ing known as a tenement or community house. Aletta M. Hageman left a will, which was duly probated, in which she devised her real estate to her executors, subject to certain trusts, with power to sell the land. After her death the executors made several conveyances to several parties of the property in said blocks two hundred and twenty-nine (229) and two hundred and thirty-eight (238), and each deed given by the executors contained the same covenant with their grantees as was contained in the deeds given by Aletta M. Hageman in her lifetime. Among other deeds thus given by the executors was one to Charles J. Heuser and Anna Heuser, his wife, which contained the restrictive covenant referred to. On June 7th, 1909, the Heusers conveyed the plot twenty-five (25) to the defendants, the deed containing an express provision that the said premises were conveyed subject to the restrictions contained in the former deed from the executors of Aletta M. Hageman to them.

It appears further, that all the deeds given by the executors of Aletta M. Hageman contained a covenant that the con-

veyances thereafter to be made by them of all lands fronting on the avenue on which the particular land described in each of said deeds fronted should contain like restrictions. Aletta M. Hageman had similarly covenanted in her deeds.

It further appears that the only dwelling-houses erected on these lands are single family houses. The defendants admit that they intend to erect upon their plot a house designed for the accommodation of two families in separate apartments, one floor of the contemplated building to be used and occupied by them as a home for themselves; and the other to be let to a desirable tenant. They deny that the erection of such a building would constitute a breach of the restrictive covenant contained in their deed.

There is no contention that the building which defendants thus contemplate erecting falls within the term "tenement house," as contained in the restrictive covenant. It is contended, however, by the complainants, that such a building would be "a community house;" and within the prohibition of the covenant.

It does not appear that any part of the proposed building, nor any of its facilities, will be inhabited or utilized in common by the respective occupants. The apartments will be entirely separate. The covenant itself requires that the building shall be not less than two stories in height.

If a double house were built upon the premises involved, separated by a partition wall, which is a very usual and customary type of dwelling construction, I do not think that such a structure would violate the present restriction, for the covenant does not limit the building to a dwelling for a single family, as in the case of *Shoyer* v. *Mermelstein, 93 N. J. Eq. 57,* nor limit it for the use or purpose of a private dwelling only, as in the case of *Skillman* v. *Smatheurst, 57 N. J. Eq. 1;* and I fail to see how it could lead to a different conclusion if the building as here contemplated were erected so that the separate dwellings were placed one above the other instead of side by side, where no part or facility thereof is to be used in common.

If it had been intended that the covenant should restrict the type of building to be constructed so that but one dwelling should be occupied by but one family on each designated plot, as contended by complainants, it could have been made clear by perfectly simple language; but this was not done.

It is a fundamental rule that where a complainant seeks to enforce a restrictive covenant his right to the relief sought must be clear. If it is doubtful, to doubt is to deny. *Marsh* v. *Marsh, 90 N. J. Eq. 244.*

I am, therefore, constrained to deny the prayer of the complainants' bill, and will advise a decree in accordance with these views.

Furthermore, it seems to me that the present application is premature in that the building when completed might not be used for two families, but by one only. Even though such a building were violative of the restrictive covenant when put to use after completion, it would be time enough to seek to restrain when it was apparent that the restriction would be violated. *Lignot* v. *Jaekle, 72 N. J. Eq. 233.*